IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | )   Case No.: 2:16-CR-550-MHT-WC |
| | ) |
| LARRY KEYUN CHAPPELL | ) |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Defendant Larry Keyun Chappell ("Defendant") is charged with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g), and with knowingly possessing two stolen firearms, in violation of 18 U.S.C. § 922(j). Indictment (Doc. 1). Evidence of those alleged crimes was seized after a string of events including police officers' attempt to stop the vehicle which Defendant was driving, Defendant's attempt to flee police on-foot, Defendant's discarding one of the firearms while fleeing, Defendant's surrender, and a subsequent search of the vehicle. Defendant filed a Motion to Suppress (Doc. 18), which is currently pending before the court. Defendant's motion seeks an order "prohibiting the United States from using or introducing at trial any and all information and/or fruits of such information, obtained as a result of [Defendant's] illegal stop and unlawful seizure." Def.'s Mot. (Doc. 18) at 5. Defendant argues the evidence against him should be suppressed because there was no reasonable suspicion to justify the traffic stop and, consequently, the items seized constitute "fruit of the poisonous tree." *Id*. at 2-5.

The Government has filed a response (Doc. 24), to which Defendant replied (Doc. 25), and the Government has filed a sur-response (Doc. 26). On June 6, 2017, the

undersigned conducted a suppression hearing on the matter at which the Government presented testimony in support of the lawfulness of the stop and seizure contested by Defendant.  The matter is now ripe for report and recommendation to the District Judge.  Upon consideration of all of the parties' briefing and the evidence and testimony adduced at the suppression hearing, the undersigned Magistrate Judge RECOMMENDS that Defendant's motion to suppress be DENIED.

## I. FINDINGS OF FACT[1]

On June 13, 2016, Corporal P. D. Williams ("Cpl. Williams"), an officer with the Montgomery Police Department's SWAT team, was conducting patrols in the Gibbs Village area of Montgomery due to neighborhood requests for heightened police presence in response to a recent spike in crime.  Suppression Hearing Transcript ("Tr.") (Doc. 32) at 3:12-4:11.  While on patrol, Cpl. Williams and his partner "observed a white Nissan Murano with no tag turning into Gibbs." *Id.* at 4:12-13.  The tag attached to the Nissan Murano appeared to be "a piece of advertisement from Car-Mart." *Id.* at 6:24.  In fact, the tag simply read, in bold letters against a white background, "America's Car-Mart," along with smaller text reading "Drive Easy."  *See* Gov.'s Ex. 2.  As Cpl. Williams testified, nothing on the tag linked it to a sale of the vehicle, there was no indicator of any State in which the vehicle might be registered referenced on the tag, no expiration date for any registration, and no registration numbers linking the tag with the vehicle.  Tr. at 6:24-7:2.

---

[1] The court reaches findings of fact at a suppression hearing based on a preponderance of the evidence. *United States v. Beechum*, 582 F.2d 898, 913 n.16 (5th Cir. 1978) (citing *Lego v. Twomey*, 404 U.S. 477, 489 (1972)).

Corporal Williams and his partner "initiated a traffic stop to verify all the paperwork was correct on the vehicle from Code 40-12-260, which basically states that you've got 20 days to get a tag in the [S]tate of Alabama after you purchase a vehicle." *Id.* at 4:13-16; *id.* at 5:22-6:1; *id.* at 14:6-8.[2]

Had Defendant stopped his vehicle and presented Cpl. Williams with a valid driver's license and the sort of paperwork described in footnote two, *supra*, then Cpl. Williams

---

[2]  The specific portion of the statute referenced by Cpl. Williams reads as follows:

> The new owner of a motor vehicle shall, within 20 calendar days from the date of vehicle purchase or acquisition, make application to record the registration of the vehicle by the transfer to or the purchase of a license plate for the newly acquired vehicle with the license issuing official of the county in which the owner resides if the owner is an individual, or with the license issuing official of the county in which the motor vehicle is used or operated if the owner is a firm, corporation, or association and shall pay the fee provided under Section 40-12-271.

Ala. Code § 40-12-260(a)(4a).  Separately, Alabama law requires that

> [e]very motor vehicle operator who operates a motor vehicle upon any city street or other public highway of or in the state shall at all times keep attached and plainly visible on the rear end of such motor vehicle a license tag or license plate as prescribed and furnished by the Department of Revenue at the time the owner or operator purchase his license.

Ala. Code § 32-6-51.  In essence, therefore, and as recognized by the parties in this matter, § 40-12-260(a)(4a) establishes a sort of limited grace period during which a vehicle purchaser is excused from the generally applicable requirement that all Alabama drivers register their vehicle and obtain a license tag or plate from the Department of Revenue and display said tag or plate on the rear of the vehicle.  However, even during this grace period, documents evidencing the sale of the vehicle within the previous twenty days, including, where appropriate, a bill of sale, "shall be retained within the vehicle" and "shall be presented, on demand, by the vehicle operator, for inspection by law enforcement officers." § 40-12-260(b)(1) & (2).  Under Alabama law, it is "unlawful for the operator to fail or refuse to present, when requested by a law enforcement officer, the official registration receipt" or other document indicating the applicability of the twenty-day grace period.  *Id.*  The statute further establishes that it is a Class C misdemeanor to fail to register a vehicle within twenty days of purchase and to fail to maintain and present appropriate documents pertaining to the sale and or registration of the vehicle.  § 40-12-260(c).

3

"would have cut him loose, told him to have a good day and to make sure he kept that paperwork with him because patrol, state trooper, or anybody else was liable to stop him until he gets a permanent tag on his vehicle." Tr. at 7:21-25.  But, that is not what Defendant did.  Instead, Defendant accelerated around a curve in the road, slammed on his brakes, "bailed from the vehicle with a gun in his hand," and ran away. *Id.* at 4:16-20.  Corporal Williams pursued Defendant on foot.  When Defendant reached some railroad tracks, he surrendered after throwing the gun into a nearby tree line. *Id.* at 4:21-24.  Corporal Williams took Defendant into custody and turned him over to an arriving patrol unit so that he could look for the firearm Defendant had tossed in the woods. *Id.* at 4:24-5:1.  After about an hour-and-a-half, Defendant advised that he wanted to assist the officers with locating the gun. *Id.* at 5:4-6.  Defendant pointed Cpl. Williams to a bush in the tree line and Cpl. Williams was able to locate the gun. *Id.* at 5:7-9.  After Defendant and his passenger were in custody, a second firearm was located in the glove compartment of the Nissan Murano. *Id.* at 5:16-19.  Defendant advised Cpl. Williams that both firearms—the one he threw in the woods and the one found in the glove compartment—were his, and that his passenger had no idea that there was a gun in the car. *Id.* at 5:10-12.  The seized firearms were subsequently turned over to a detective with the Montgomery Police Department and now form the basis for the instant charges against Defendant. *Id.* at 5:13-15.

## II.   DEFENDANT'S ARGUMENTS

Defendant moves the court to order suppression of "all information and/or fruits of such information, obtained as a result of [Defendant's] illegal stop and unlawful seizure."

4

Doc. 18 at 5.  Defendant argues that Cpl. Williams lacked reasonable suspicion to believe that Defendant was violating any traffic law because there was nothing inherently suspicious about the tag affixed to Defendant's vehicle, and Cpl. Williams admitted that he stopped Defendant's vehicle only to check his paperwork with regard to the legal requirements previously discussed.  *Id.* at 4.  Defendant further argues that, because there was no reasonable suspicion to justify the stop by Cpl. Williams, all evidence subsequently seized, including Defendant's statements, must be suppressed as "fruit of the poisonous tree."  *Id.* at 4-5.

### III.   THE GOVERNMENT'S RESPONSE

In response, the Government argues several bases for denying suppression of the evidence, including the following: 1) that Defendant abandoned the firearm located in the woods; 2) that the traffic stop never rose to a Fourth Amendment seizure because Defendant fled from his vehicle immediately after stopping in response to the attempted traffic stop; and 3) if the traffic stop did rise to the level of a constitutionally protected Fourth Amendment seizure, then it was supported by reasonable suspicion and was, therefore, lawful.  Gov't's Resp. (Doc. 24) at 5-7.

### IV.   APPLICABLE LAW

The Fourth Amendment to the United States Constitution guarantees the right of individuals "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizure."  U.S. Const. amend. IV.  In general, a seizure of the person, as applicable to Fourth Amendment protections, occurs when police conduct would communicate to a reasonable person, taking into account the circumstances surrounding

5

the encounter, that the person is not free to ignore the police presence and leave at his will. *United States v. Mendenhall*, 466 U.S. 544, 554 (1980). Likewise, a search, as applicable to Fourth Amendment protections, occurs when a governmental employee or agent violates a person's reasonable expectation of privacy. *United States v. Jacobsen*, 466 U.S. 109, 114 (1984) ("A search occurs when an expectation of privacy that society is prepared to consider reasonable is infringed."). A seizure of property discovered as a result of such a search occurs when there is some meaningful interference with a person's possessory interests in that property. *Id.*

Generally, the Fourth Amendment protects against unreasonable seizures. U.S. Const. amend. IV. In determining whether a seizure is reasonable, the type of encounter between police and the citizen determines the amount of Fourth Amendment scrutiny to be applied. *United States v. Perkins*, 348 F.3d 965, 969 (11th Cir. 2003). The Supreme Court has identified at least three levels of scrutiny to be applied to police-citizen encounters:

> (1) brief, consensual and non-coercive interactions that do not require Fourth Amendment scrutiny, *Florida v. Bostick*, 501 U.S. 429 (1991); (2) legitimate and restrained investigative stops short of arrests to which limited Fourth Amendment scrutiny is applied, *Terry v. Ohio*, 392 U.S. 1 (1968); and (3) technical arrests, full-blown . . . custodial detentions that lead to a stricter form of Fourth Amendment scrutiny, *Brown v. Illinois*, 422 U.S. 590 (1975).

*Perkins*, 348 F.3d at 969.

The second category—investigative stops short of arrests, including traffic stops—is relevant in this matter. Such stops are governed by *Terry v. Ohio*, and are subjected to limited Fourth Amendment scrutiny requiring only a reasonable suspicion of criminal wrongdoing. 392 U.S. 1, 30 (1968). *See also Knowles v. Iowa*, 525 U.S. 113, 117 (1998)

(quoting *Berkemer v. McCarty*, 468 U.S. 420, 439 (1984)) ("[A] relatively brief encounter, a routine traffic stop is 'more analogous to a so-called *Terry* stop.'"). While such stops are "seizure[s] within the meaning of the Fourth Amendment," *United States v. Purcell*, 236 F.3d 1274, 1277 (11th Cir. 2001), they are "constitutional if [they are] *either* based upon probable cause to believe a traffic violation has occurred *or* justified by reasonable suspicion as set forth in *Terry*." *United States v. Harris*, 526 F.3d 1334, 1337 (11th Cir. 2008) (per curiam) (citing *United States v. Chanthasouxat,* 342 F.3d 1271, 1275 (11th Cir. 2003)) (emphasis added). When determining if probable cause exists "to believe a traffic violation occurred, the 'officer's motive in making the traffic stop does not invalidate what is otherwise objectively justifiable behavior under the Fourth Amendment.'" *Id*. at 1337 (citing *United States v. Simmons*, 172 F.3d 775, 778 (11th Cir. 1999)). When determining if reasonable suspicion exists for a *Terry* stop, an officer may briefly stop and detain an individual for investigation if the officer reasonably suspects that criminal activity is afoot. *United States v. Sokolow*, 490 U.S. 1, 7 (1989). In other words, under the reasonable suspicion standard, the Fourth Amendment is not violated where the law enforcement officer conducting the stop can articulate "'a particularized and objective basis for suspecting'" that a traffic violation has occurred. *Navarette v. California*, 134 S.Ct. 1683, 1687 (2014) (quoting *United States v. Cortez*, 449 U.S. 411, 417-18 (1981)). Reasonable suspicion is determined from the collective knowledge of all officers involved in the stop, and it demands "considerably less" than probable cause, but "police are required to articulate some minimal, objective justification for the stop." *United States v. Mikell*, 102 F.3d 470, 475 (11th Cir. 1996); *United States v. Williams*, 876 F.2d 1521, 1524 (11th Cir.

7

1989). Courts look to the totality of the circumstances to ascertain "whether the detaining officer ha[d] a particularized and objective basis for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273 (2002).

## V.   DISCUSSION

Applying the aforementioned case law, the undersigned concludes that Defendant's Fourth Amendment rights were not violated and, accordingly, his motion to suppress is due to be denied.

In short, the evidence adduced at the hearing establishes that Cpl. Williams had sufficient reasonable, articulable suspicion to justify briefly stopping Defendant's vehicle and investigating whether he was in compliance with Alabama laws requiring him to register a newly acquired vehicle and display of a proper license tag or plate. Corporal Williams plainly was aware of the Alabama laws requiring Defendant to obtain registration for his vehicle and properly display a prescribed license tag or plate, as well as the Alabama law establishing a twenty-day grace period for enforcement of those laws. *See, e.g.*, Tr. 4:13-16; 5:22-6:1. Thus, having viewed the "Car-Mart" advertisement serving as Defendant's license tag or plate, Cpl. Williams possessed reasonable suspicion to believe that Defendant was in violation of those laws. *See, e.g., United States v. DeJesus*, 435 F. App'x 895, 899-900 (11th Cir. 2011) (finding traffic stop supported by reasonable suspicion where officer "was unable to tell from a distance whether [defendant driver's] temporary license plate was in compliance with § 32-6-51 because he could not make out all of the information on the license plate and because temporary tags such as the one on [defendant driver's] minivan look like 'a piece of paper that you could print out . . . with

your personal computer.'"); *United States v. Smith*, 164 F. App'x 825, 826-27 (11th Cir. 2006) (finding traffic stop supported by reasonable suspicion where officer stopped vehicle after observing "the vehicle had a 'paper car lot tag'" and wanted to "confirm the validity of the paper tag."); *United States v. Sledge*, Crim. No. 16-031-WS, 2016 WL 3024149, at *3 (S.D. Ala. May 25, 2016) (finding traffic stop supported by reasonable suspicion where defendant driver was displaying no tag and despite that subsequent investigation revealed that defendant driver was actually within the twenty day grace period afforded by Alabama law); and *United States v. Hernandez-Arellano*, No. 2:06-cr-147-WKW, 2006 WL 2864406, at *3 n.3 (M.D. Ala. Oct. 5, 2006) (adopting the Recommendation of the Magistrate Judge) (finding traffic stop supported by reasonable suspicion where the only visible tag was a car dealer's tag and "it was reasonable for officers to stop the truck in order to determine whether or not the dealer's tag should have been replaced with a regular license plate by the date of the stop"). Although not binding on the court, the undersigned finds these cases extremely persuasive on the issue raised by Defendant's motion. Moreover, Defendant points the court to no case in which a court has found that a traffic stop for the purpose of investigating the applicability of Alabama's twenty-day grace period, or an analogous law in some other state, was not supported by reasonable suspicion.

In the absence of any salient case law, Defendant's argument that Cpl. Williams did not possess reasonable suspicion sufficient to justify a traffic stop is unpersuasive. He likens the requirement to register a vehicle and obtain and display a permanent tag to Alabama's separate requirement that motor vehicle operators carry within their vehicles evidence of insurance coverage and argues that "the police cannot just randomly stop

people to verify compliance with the insurance requirement. The proposition that the police can just arbitrarily stop cars with any temporary tag, even if it looks new and unadulterated, is just as offensive to the Fourth Amendment." Def.'s Reply (Doc. 25) at 2. Of course, Cpl. Williams acknowledged in his testimony that he is not permitted to pull over drivers merely to check whether they have a current driver's license or proof of insurance. Tr. at 16:5-13. However, the legal obligations compared by Defendant are distinct in significant and material ways. Defendant acknowledges in his reply brief that Alabama law "requires that every motor vehicle should keep attached and plainly visible a license tag or plate 'at the time the owner or operator purchases his license.'" Def.'s Reply (Doc. 25) at 1-2. There is, of course, no similar requirement in Alabama law that a motor vehicle operator outwardly and prominently display his insurance credentials or valid driver's license status to other drivers and law enforcement officers. Were there such a requirement, police would be amply justified in stopping non-complying vehicles to investigate whether the drivers were licensed and insured. As such, Defendant's analogy fails.

 Furthermore, Defendant's favored application of the reasonable suspicion standard in this context would cause absurd results. Under Defendant's interpretation of the law, motor vehicle operators would be able to avoid registering their vehicles, and could continue to display non-conforming tags, including car lot advertisements, indefinitely—so long as they maintained those tags or simply replaced them at the first signs of aging. The requirement to obtain and display registration of a motor vehicle unquestionably serves vital interests in public safety and law enforcement, but, under Defendant's interpretation

of the law, officers would be powerless to enforce these important provisions of Alabama law absent specific information that a particular driver possessed their motor vehicle for more than twenty days. The undersigned will interpret Alabama law to avoid such a patently absurd result, especially considering that, as discussed above, the only other courts known to have interpreted these statutes in similar contexts have reached the same result.[3]

Because Defendant's vehicle featured a car lot advertisement in place of a permanent license tag or plate, Corporal Williams possessed reasonable suspicion to believe that Defendant was in violation of Alabama laws concerning the registration of motor vehicles and the proper display of a prescribed license tag or plate. As such, Cpl. Williams was permitted under the Fourth Amendment to initiate a traffic stop of Defendant's vehicle and briefly investigate whether Defendant was complying with Alabama law and, specifically, whether Defendant was protected by the twenty-day grace period Alabama law affords vehicle purchasers. Accordingly, Defendant's Fourth

---

[3] Defendant also appears to believe that another reason this court should order suppression of the evidence is the ruling of a state court judge in a related state court case. *See* Def.'s Mot. (Doc. 18) at 4; Def.'s Reply (Doc. 25) at 3. Indeed, Defendant entered the state court judge's order into evidence at the suppression hearing for the purpose of "enlightening" the court about the state court's reasoning given the largely similar testimony proffered by Cpl. Williams in that court. Tr. 22:12-16. The state court's "Amended Order of Dismissal," however, is not persuasive. The order is devoid of any cogent Fourth Amendment analysis—it consists of one paragraph bearing no citations to any case, state or federal—and appears to labor under the erroneous conclusion that Defendant's vehicle displayed a "paper tag" that was issued by a governmental entity. *See* Def.'s Ex. 1 ("Every county in Alabama issues paper tags. If the issuing authority wanted to it could write or stamp an expiration date on the tag itself. After all, citizens have a right to be free from unreasonable search and seizure by their government. This court finds that a paper tag that is regular on its face, with no apparent alterations, issued by a proper authority, carries a presumption of validity and a 'papers please' stop, as here, is unconstitutional on the facts of this case."). Neither the state court judge nor Defendant explain whether and how this reasoning would apply to a "Car-Mart" advertisement, as is relevant in this case. Accordingly, the undersigned is respectfully unmoved by the state court judge's order of dismissal.

Amendment rights were not violated by the attempted traffic stop, and he is not entitled to suppression of any of the evidence or statements obtained by law enforcement subsequent to the attempted traffic stop. Because this conclusion is dispositive of Defendant's motion, the court need not resolve the Government's additional arguments that Defendant is not entitled to suppression because he abandoned the firearms recovered by law enforcement and because the stop did not rise to a seizure protected by the Fourth Amendment.

## VI.   CONCLUSION

For the reasons stated above, the undersigned RECOMMENDS that Defendant's Motion to Suppress (Doc. 18) be DENIED.

It is further ORDERED that the parties are DIRECTED to file any objections to the said Recommendation on or before **July 14, 2017**. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive, or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); s*ee Stein v. Reynolds Sec., Inc.*, 667 F.2d 33 (11th Cir. 1982); s*ee also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*) (adopting as binding precedent

all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

Done this 30th day of June, 2017.

                                            <u>/s/ Wallace Capel, Jr.</u>
                                            CHIEF UNITED STATES MAGISTRATE JUDGE