IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | CRIMINAL ACTION NO. |
| v. | ) | 2:16cr550-MHT |
| | ) | (WO) |
| LARRY KEYUN CHAPPELL | ) | |

OPINION

In this criminal case, defendant Larry Keyun Chappell moved to suppress two guns that were found after a traffic stop. He is charged with possession of a firearm as a felon, 18 U.S.C. § 922(g)(1), and possession of a stolen firearm, 18 U.S.C. § 922(j). He contended that the guns were obtained as a result of an unlawful traffic stop and should be suppressed as fruit of that stop. The government responded that the stop was lawful, and that, even if unlawful, the evidence should be not be suppressed due to Chappell's flight from the police officers and abandonment of the guns. At the suppression-motion hearing, the United States Magistrate Judge heard testimony from one of the police officers who conducted the stop. The magistrate judge

recommended that the motion be denied. After an independent and de novo review of the record, the court entered an order adopting the magistrate judge's recommendation and denying Chappell's suppression motion, albeit on a ground different from that relied upon by the magistrate judge. The court promised that an opinion would follow later. This is the promised opinion.

I. BACKGROUND

On June 13, 2016, two Montgomery, Alabama Police Department officers initiated a traffic stop of Chappell because his vehicle, a Nissan Murano, had no permanent license plate and instead had only a paper tag that said "America's Car-Mart," with smaller text reading "Drive Easy." One of the officers testified that, when they initiated the stop, Chappell accelerated around a corner, slammed on his brakes, and then fled on foot, leaving the car behind. The officers pursued Chappell on foot and apprehended him,

but only after he threw away a Springfield .45 caliber pistol while fleeing; he later helped the police recover that gun. The police also searched Chappell's car and found a Glock .45 caliber gun in the glove compartment. Chappell was found to be a convicted felon and was charged with the firearm offenses.

## II. DISCUSSION

The Fourth Amendment to the United States Constitution guarantees the right of individuals "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizure." U.S. Const. amend. IV. A seizure requires physical force or submission to the assertion of authority. California v. Hodari, 499 U.S. 621, 626 (1991). An investigative traffic stop that meets this definition but does not amount to an arrest therefore may still be considered a seizure. See Terry v. Ohio, 392 U.S. 1, 17 (1968).

Traffic stops are considered reasonable, and therefore lawful under the Fourth Amendment, if

conducted based on reasonable suspicion that the motorist is engaging in criminal activity, or based on probable cause to believe that a traffic violation has occurred. United States v. Harris, 526 F.3d 1334, 1337 (11th Cir. 2008) (internal citations omitted). A "reasonable suspicion" is one for which there is a "particularized and objective basis." Navarette v. California, 134 S. Ct. 1683, 1687 (2014) (internal citations omitted).

The magistrate judge held that the guns were the product of a seizure that was lawfully based on "sufficient reasonable, articulable suspicion to justify briefly stopping [Chappell]'s vehicle and investigating whether he was in compliance with Alabama laws requiring him to register a newly acquired vehicle and display of a proper license tag or plate." Recommendation (doc. no. 33) at 8.[1] However, the

---

1. The court disagrees with the magistrate judge's conclusion that the attempted stop was lawful and is of the opinion that, if the stop had been successful--that is, if Chappell had submitted to the assertion of

4

authority when the officers tried to stop him--the stop would not have been based on reasonable suspicion. Though subject of much confusion in the briefing, the State of Alabama does not require any type of temporary tag within the first 20 days of acquiring a vehicle, as long as the motorist carries paperwork showing that the 20-day limit has not passed. See 1975 Ala. Code § 40-12-260(b)(2). Even if arbitrarily stopping motorists without permanent license plates is the only way of enforcing the 20-day limit, the Fourth Amendment does not authorize the State to exercise such "unbridled discretion" in stopping cars, especially when much more "productive mechanisms" of ensuring compliance exist. Delaware v. Prouse, 440 U.S. 648, 659 (1979) (holding that the Fourth Amendment does not allow random and arbitrary spot checks of registration and license requirements, given the magnitude of intrusion into the motorists' Fourth Amendment rights and that there are more "productive mechanisms" for pursuing the important state interest of enforcing vehicle safety regulations). For example, instituting an official temporary plate requirement would be a much more enforceable mechanism for ensuring timely display of a permanent license plate. See, e.g., Ga. Comp. R. & Regs. 560-10-32-.05 (requiring all newly acquired vehicles to display an official temporary plate listing its expiration date). In other words, arbitrarily stopping motorists without permanent license plates would violate the Fourth Amendment in the absence of any particularized and objective basis for reasonable suspicion that the motorist is violating the 20-day limit--for example, an observation that a motorist's temporary tag had signs of wear or aging beyond 20 days.

question precedent to whether the seizure was lawful is whether there was, in fact, a seizure at all.

In Hodari, the Supreme Court held that a Fourth Amendment seizure requires either physical force or "submission to the assertion of authority." 499 U.S. at 626. The Court explained that the Fourth Amendment "does not remotely apply ... to the prospect of a policeman yelling 'Stop, in the name of the law!' at a fleeing form that continues to flee. That is no seizure." Id. In other words, a person is not considered seized while he is engaged in the act of fleeing from the police.

Based on this understanding of seizure, the Hodari Court found that drugs thrown away by an individual who was running away from the police are not considered fruit of an unlawful seizure, for, according to the Court, there had been no seizure at the time the drugs were discarded. Whether the officer had reasonable suspicion at the time of initiating the stop was irrelevant.

Similarly here, Chappell was not seized during the time he was engaged in the act of fleeing from the police.[2] Similarly, the gun that he threw away while fleeing is analogous to the drugs that the defendant in <u>Hodari</u> threw away while fleeing from the police; it was not the product of an illegal seizure, for there had been no seizure when he abandoned it. Likewise, no seizure had occurred when Chappell, while fleeing, abandoned the car and the gun in the glove compartment.[3]

---

[2]. The magistrate judge admitted that there was only an "attempted traffic stop," Recommendation (doc. no. 33) at 12. However, "neither usage nor common-law tradition makes an <u>attempted</u> seizure a seizure." <u>Hodari</u>, 499 U.S. at 626 n. 2 (emphasis in original).

[3]. That Chappell initially stopped the car and then ran away on foot does not warrant a different result. The suppression hearing testimony credibly reflected that the car accelerated when the officers initiated the stop and that thus Chappell fled in the car and on foot. That he stopped the car before fleeing on foot does not detract from the fact that he was fleeing from the beginning until he eventually surrendered, after abandoning both guns. During this time he never submitted to the assertion of authority.

Moreover, as with the person on foot, a motorist is not seized when he drives away from an attempted traffic stop--it only occurs when he actually is stopped. <u>See</u>, <u>e.g.</u>, <u>United States v. Dolomon</u>, 569 F.

Of course, an individual "who abandons or denies ownership of personal property may not contest the constitutionality of its subsequent acquisition by the police." United States v. Cofield, 272 F.3d 1303, 1306 (11th Cir. 2001). Though admittedly, if abandonment of evidence was induced by an illegal seizure, the abandoned evidence could be considered fruit of the unlawful seizure and would be excluded, as explained in United States v. Beck, 602 F.2d 726 (5th Cir. 1979).[4] However, in this case, Chappell fled and no seizure occurred; therefore, the principle in Beck does not apply.

---

App'x 889, 892-93 (11th Cir. 2014) (finding no seizure when the police unsuccessfully chased the defendant and attempted to contain his truck at the traffic light by bumping the defendant's front fender); see also United States v. Griffin, 652 F.3d 793, 798 (7th Cir. 2011) (finding that for a motorist who attempted to evade the officers in a car chase before eventually stopping, his seizure only began when he stopped and submitted to the officers' assertion of authority).

4. The Eleventh Circuit has adopted as precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981. See Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

* * *

In sum, the court holds that the guns abandoned by Chappell were not fruit of an unlawful seizure, for there had been no seizure at the time the guns were abandoned. For this reason, the court denied Chappell's motion to suppress.

DONE, this the 4th day of August, 2017.

                                               /s/ Myron H. Thompson
                                          **UNITED STATES DISTRICT JUDGE**